IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIGITAL DREAM LABS, INC,<br><br>Plaintiff,<br><br>vs.<br><br>LIVING TECHNOLOGY (SHENZHEN) CO., LTD,<br><br>Defendant. | 2:22-CV-00603-CCW |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Living Technology (Shenzhen) Co., Ltd.'s (d/b/a "Living.AI") Motion to Dismiss Plaintiff Digital Dream Labs, Inc.'s ("DDL") Complaint. ECF No. 13. For the reasons that follow, the Motion will be GRANTED.

### I. Background

This case relates to another pending before this Court, *Digital Dream Labs, Inc. v. Living Technology (Shenzhen) Co.*, 20-CV-01500-CCW ("*DDL I*"). Both cases involve the same three interactive desktop robots: VECTOR, COZMO, and EMO. In *DDL I*, DDL alleges that it holds various copyrights and trademark rights for VECTOR and COZMO, which it says Living.AI infringed upon with its competing robot, EMO. *See generally DDL I*, ECF No. 27. Living.AI moved to dismiss DDL's Second Amended Complaint in *DDL I*, and the Court granted its motion in part and denied it in part. *See generally DDL I*, ECF No. 54. In particular, the Court ruled that DDL: (1) could proceed on Count I, its copyright claim, as to VECTOR's and COZMO's faces as audio-visual works, though not their bodies as sculptural works; (2) could proceed on Count II, its trademark claim; and (3) failed to state a claim as to Count III, its trade dress claim. *See generally DDL I*, ECF No. 54.

DDL filed the instant action about two months after the Court issued its ruling on Living.AI's motion to dismiss in *DDL I*. In its new Complaint, DDL asserts a single claim for copyright infringement against Living.AI. *See generally* ECF No. 1. Specifically, DDL now alleges that it also holds copyrights covering VECTOR's source code, including four copyrights covering VECTOR's menu screens, and that Living.AI has infringed upon those four copyrights by using VECTOR's source code for EMO's menu screens. *Id.* ¶¶ 1, 18. DDL further alleges that Living.AI had access to COZMO and VECTOR "developer" robots, through which Living.AI was able to "access binary source code . . . and then deconstruct this binary code into source code for use with the EMO robot" using a "proprietary software key." *Id.* ¶¶ 31–36. Although DDL concedes that it does not have access to EMO's source code, it points to similarities between VECTOR's and EMO's menu screens to substantiate its infringement claim. *Id.* ¶¶ 40–44. Living.AI moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), ECF No. 13, and with briefing completed, ECF Nos. 14, 17, 20, the Motion is ripe for adjudication.[1]

**II.    Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'"

---

[1] This Court has federal question jurisdiction over DDL's copyright claim under 28 U.S.C. § 1331.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

**III.    Discussion**

A claim for copyright infringement has two elements: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Tanksley v. Daniels*, 902 F.3d 165, 172–73 (3d Cir. 2018) (quoting *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)). Living.AI's Motion challenges only the sufficiency of DDL's allegations regarding "unauthorized copying"; at this stage it does not challenge DDL's ownership of copyrights covering the source code for VECTOR's menu screens.

3

Unauthorized copying has two elements of its own: "actual copying and material appropriation of the copyrighted work." *Id.* Although direct evidence of actual copying is rare, a plaintiff may satisfy its burden on this sub-element with a showing that the defendant had "access" to the copyrighted work and of "probative similarity" between the works at issue. *Id.* Material appropriation exists where the protectible elements of the two works are "substantially similar." *Id.* at 171–73. According to Living.AI, DDL has failed to plausibly allege both access and substantial similarity, such that the Court has two independent grounds for dismissing DDL's copyright infringement claim.

### A.     DDL Has Failed to Plausibly Allege That Living.AI Had Access to VECTOR's Source Code

Living.AI argues that DDL has failed to plausibly allege that Living.AI had access to a VECTOR developer robot, let alone access to VECTOR's source code through that developer robot. ECF No. 14 at 4–7. DDL responds that its allegations are sufficient because they demonstrate that Living.AI had a "reasonable opportunity to [observe] plaintiff's work or a reasonable possibility to copy plaintiff's work," which is all it must allege to plead access. ECF No. 17 at 10 (quoting *Cottrill v. Spears*, No. CIV.A. 02-3646, 2003 WL 21223846, at *5 (E.D. Pa. May 22, 2003), *aff'd*, 87 F. App'x 803 (3d Cir. 2004)). Although the Court agrees that DDL sufficiently pleaded that Living.AI had access to a VECTOR developer robot, DDL has not plausibly alleged that Living.AI had access to VECTOR's source code, which is the work at issue here. *See Digit. Dream Labs, LLC. v. Living Tech. (Shenzhen) Co.*, --- F. Supp. 3d ----, 2022 WL 597358, at *4 (W.D. Pa. 2022) (Wiegand, J.) ("[C]onsidering DDL's copyright infringement claim, the Court must first determine which works are at issue.").

DDL makes several specific allegations to support its theory that Living.AI accessed VECTOR's source code through a VECTOR developer robot. ECF No. 1 ¶¶ 30–36. First, DDL

4

alleges that both VECTOR and COZMO developer robots were available for purchase at a December 2019 liquidation sale by the previous holder of VECTOR's and COZMO's intellectual property rights, Anki, Inc. *Id.* ¶¶ 34–35. Second, DDL alleges that it observed Living.AI in possession of a COZMO developer robot (though not a VECTOR developer robot) at a live demonstration before this Court, which was held on January 25, 2022 in conjunction with Living.AI's motion to dismiss the Second Amended Complaint in *DDL I*. *Id.* ¶ 31. Finally, DDL alleges that its developer robots are distinct from their commercial counterparts because the developer versions "provide greater access to the internal file system of the VECTOR[] robot," and that Living.AI accessed the VECTOR source code by using a "proprietary software key." *Id.* ¶¶ 32, 36.

Initially, the Court agrees with DDL that it has at least sufficiently pleaded that Living.AI had access to a VECTOR developer robot. DDL pleaded that it saw Living.AI representatives in possession of a COZMO developer robot at the live demonstration and described how both VECTOR and COZMO developer robots could be purchased at the 2019 liquidation sale. These alleged facts, coupled with the fact that DDL and Living.AI are competitors, make it plausible that Living.AI had a "reasonable opportunity" to obtain and access a VECTOR developer robot. *Cottrill*, 2003 WL 21223846, at *5. Of course, access to a VECTOR developer robot is not the same as access to VECTOR's *source code*, which is the copyrighted work at issue.

Turning to that source code, DDL has failed to plausibly allege that Living.AI had access to VECTOR's source code. As DDL's allegations implicitly concede, the fact that a developer robot allows greater access to internal files is significant only if the party seeking to exploit that fact has "a proprietary software key" permitting it "to access [the developer robot's] binary source code." ECF No. 1 ¶ 36. But DDL has offered nothing more than conclusory allegations that

5

"Living.AI also has obtained the proprietary software key" for a VECTOR developer robot, and conclusory allegations cannot defeat a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 555. Without any specific allegations regarding how Living.AI would have come by the key, DDL has failed to plausibly allege that Living.AI accessed VECTOR's source code, and thus that Living.AI "actual[ly] copied" that source code.[2] Accordingly, the Court will dismiss DDL's copyright infringement claim. The Court, however, will grant DDL leave to amend its Complaint to supplement its allegations regarding access.

### B.  The Court Will Not Rule on Substantial Similarity

Living.AI also argues that the Court should dismiss DDL's Complaint because it has failed to plausibly allege "substantial similarity." Substantial similarity "is usually an extremely close question of fact" reserved for the trier of fact, but "courts will dismiss an infringement action if they conclude that no trier of fact could rationally determine the two works to be substantially similar." *Tanksley v. Daniels*, 902 F.3d 165, 171–72 (3d Cir. 2018) (alteration and internal quotation marks omitted). Living.AI argues that DDL has failed to plausibly allege substantial similarity between the VECTOR and EMO menu screen source codes because: (1) DDL has conceded that it does not have access to EMO's source code from which to compare it to VECTOR's; (2) the two robots' menu screens are "substantially different"; and (3) any similarities between the screens pertain to features that are not protectible under copyright law. ECF No. 13 at 7–13.

---

[2] In its opposition to Living.AI's Motion, DDL references various unpleaded facts that it says support the inference that Living.AI had access to the source code. ECF 17 at 6 n.3 (arguing that "the proprietary software key is imbedded within and can be accessed directly from the VECTOR[] developer robot" and that the key was separately made available online by former Anki employees). The Court must disregard these facts, which were not made a part of the pleadings, and does not address whether they would be sufficient to show that Living.AI had access to VECTOR's source code when pleaded with DDL's existing allegations. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (in ruling on a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

Ultimately, the Court finds it unnecessary to rule on Living.AI's substantial similarity argument because DDL's failure to plead access is sufficient to warrant dismissal. The Court notes, however, that DDL's inability to obtain EMO's source code at this juncture is not necessarily dispositive. *See Gay v. Facebook, Inc.*, No. 16-cv-03013 NC, 2016 WL 10650825, at *2 (N.D. Cal. Oct. 19, 2016) (denying motion to dismiss claim alleging infringement of copyrighted source code even though plaintiff conceded he had no access to the allegedly infringing code because the plaintiff "allege[d] that [defendant] had access to [plaintiff's] source code, and because the two works express the same general idea") (collecting cases). As to whether, without EMO's source code, similarities between the two robots' menu screens are enough to plausibly allege substantial similarity between the underlying source codes, in *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, the United States Court of Appeals for the Third Circuit held that evidence of similarities between video outputs may be probative of substantial similarity in underlying code. 797 F.2d 1222, 1244 (3d Cir. 1986). *Whelan*, however, does not outright foreclose Living.AI's argument that only protectable features of VECTOR's and EMO's menu screens should be considered to determine substantial similarity given that more recent Third Circuit panels have held that "when assessing material appropriation, i.e., substantial similarity, only similarities in protectable expression may be considered." *Tanksley*, 902 F.3d at 173. These issues will be resolved if and when DDL is able to plausibly allege access should Living.AI move to dismiss an amended complaint on similar grounds.

**IV.    Conclusion**

For the reasons set forth above, Living.AI's Motion to Dismiss DDL's Complaint is GRANTED with leave to amend. DDL shall file any amended complaint on or before October 12, 2022.

DATED this 28th day of September, 2022.

                                                BY THE COURT:

                                                <u>/s/ Christy Criswell Wiegand</u>
                                                CHRISTY CRISWELL WIEGAND
                                                United States District Judge

cc (via ECF email notification):

All Counsel of Record